UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANTIONE D. FORD,

        Plaintiff,                     Case No. 1:12-cv-367

v.                                        Honorable Gordon J. Quist

CINDI CURTIN et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Antione D. Ford is a prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF),[1] where the events giving rise to this action occurred. He sues the following employees of ECF: Warden Cindi Curtin, Assistant Deputy Wardens (ADW) (unknown) Ball,[2] (unknown) Sanders, and (unknown) Sharp, Inspector J. Schiebner, Resident Unit Manager (unknown) Thomas, and Assistant Resident Unit Supervisor (unknown) Weaver. He also sues D.J. Pallas, a MDOC hearing officer assigned to ECF.

In November 2011, Plaintiff was called to the ECF control center for fingerprinting "pursuant to Public Act No. 18" (hereinafter, the "Act").[3] (Compl. ¶ 13, docket #1.) Upon arriving at the control center, a sergeant told him that the Act required Plaintiff to provide fingerprints and that if he failed to comply he could be prosecuted and convicted of an offense warranting additional incarceration.[4] Plaintiff told the officer that he has a Fourth Amendment right to avoid unreasonable searches and seizures. Plaintiff asked to read the Act, and noted where it indicated that an individual "shall have his fingerprints taken not later than September 12, 2011." *See* Mich. Comp. Laws

---

[1] In 2002, Petitioner was convicted of pandering, Mich. Comp. Laws § 750.455, transporting women for prostitution, Mich. Comp. Laws § 750.459, and using a child for sexually abusive activity, Mich. Comp. Laws § 750.145c(2). *People v. Ford*, No. 239974, slip op. at 1 (Mich. Ct. App. Sept. 11, 2003).

[2] ADW Ball is not named in the original complaint; however, Plaintiff has since filed a "Motion for Leave to File an Amended Complaint" (docket #43). In the motion, Plaintiff seeks to add Ball as a Defendant and he states additional allegations and claims against him. (*Id.*) At this stage, Plaintiff does not need leave of the Court to amend his complaint. *See* Fed. R. Civ. P. 15(a)(1). Therefore, the Court adds Ball as a Defendant to this action and deems the additional allegations and claims in Plaintiff's motion to be part of the complaint.

[3] In July 2011, the Michigan legislature passed Public Act 18 to conform its Sex Offenders Registration Act, Mich. Comp. Laws § 28.721 et seq. ("SORA"), with federal law. *See* Mich. Comp. Laws §§ 28.726, 28.727 (as amended by Public Act 18). SORA requires certain individuals residing in Michigan, including those who have been convicted of a "listed offense," to register with the Michigan State Police. Mich. Comp. Laws § 28.723(a). Plaintiff's convictions for pandering and for using a child for sexually abusive activity are listed offenses. *See* Mich. Comp. Laws § 28.722. To satisfy the registration requirement, the offender must provide fingerprints and, under the 2011 amendments to the Act, palm prints. Mich. Comp. Laws § 28.727(1)(q).

[4] Willfully failing to register as required by the SORA is punishable as either a misdemeanor or a felony, depending on the circumstances. Mich. Comp. Laws § 28.729.

§ 28.727(q). Plaintiff asked why he was being required to give his fingerprints in November. He was told that the prison had received the fingerprinting machine late. Plaintiff declined to give his fingerprints and returned to his unit.

On December 4, 2011, Defendant Schiebner called Plaintiff to the control center for finger printing. Plaintiff refused to give his prints, citing the Fourth Amendment and the provision in the Act stating that prints should be taken no later than September 2011. Schiebner told Plaintiff that if he did not comply, he would receive a misconduct report, and the report would be sent to a state prosecutor. Plaintiff again refused and stated that he would file a grievance. Plaintiff then returned to his unit and wrote a grievance.

Later that day, Plaintiff was called back to the control center to be reviewed for a misconduct report issued by Schiebner for disobeying an order to give fingerprints. Schiebner allegedly elevated the charge from a class II misconduct to a class I misconduct.[5] Plaintiff told Schiebner and the officer reviewing the report that he would not provide fingerprints.

On December 19, Plaintiff received a misconduct hearing with Defendant Pallas as the hearing officer. Plaintiff explained that he was not guilty of the misconduct because the order was unreasonable – it was given pursuant to a law that did not apply to Plaintiff. Pallas found Plaintiff guilty of the misconduct and punished him with 15 days of loss of privileges. Plaintiff appealed the decision.

The following day, Plaintiff was escorted to segregation. Defendant Schiebner told Plaintiff that he was being placed in segregation because he was under investigation by the Michigan

---

[5] Disobeying a "valid and reasonable" order is a "Class II" misconduct. MDOC Policy Directive 03.03.05, Attach. B (eff. 11/01/2010). Reviewing officers can elevate a Class II misconduct to a Class I misconduct "based on the seriousness of the specific facts as stated in the misconduct or the circumstances of the misconduct." *Id.*, Attach. A. Unlike Class II misconducts, Class I misconducts may result in punitive segregation. *Id.*, Attach. D.

State Police for a felony. Plaintiff wrote a grievance about his segregation, claiming that he was receiving unjust treatment because he had not violated any MDOC rules, and he had not received a warrant or complaint from the Michigan State Police.

After nine days in segregation, Plaintiff was taken to a hearing before Defendant Pallas, who told Plaintiff that he was being held in segregation because of the police investigation, per MDOC Policy Directive 04.05.120 ¶ L(4). *See id.* (providing that a prisoner may be placed in segregation if "[t]he prisoner is under investigation by an outside authority for suspected felonious behavior and it is reasonably believed that the prisoner needs to be segregated while the investigation is pending"). Plaintiff argued that even if there was an investigation, there was no *need* to segregate him. Pallas decided that Plaintiff would remain in segregation until he was reviewed by the Security Classification Committee, but indicated that Plaintiff might be released if he provided his fingerprints.

Later that day, Plaintiff was reviewed by the Security Classification Committee, which included Defendants Sanders and Weaver. Plaintiff explained that he was in segregation because he refused to give fingerprints. Sanders and Weaver decided to keep Plaintiff in segregation, subject to periodic review.

On December 31, Plaintiff wrote a letter to Warden Curtin explaining all that had happened. He never received a response. Plaintiff met with the Security Classification Committee again on January 6, 2012; this time, Defendants Sanders and Thomas were the reviewing officers. Plaintiff explained to them that the Act did not apply to him. They told Plaintiff that he would be kept in segregation until the conclusion of the police investigation.

While in segregation, Plaintiff faced a January 13 filing deadline with the Court of Appeals for the Sixth Circuit. He wrote kites to the law library requesting copies of documents to meet his deadline, but he never received a response. On January 17, Defendants Sharp and Thomas

again reviewed Plaintiff's security classification and told Plaintiff that he would remain in segregation until the conclusion of the police investigation.

On February 14, Defendants Sanders and Thomas reviewed Plaintiff's security classification. Plaintiff asked them for a status of the police investigation; Sanders told him to contact Defendant Schiebner. Sanders also indicated that he saw no reason "in holding segregation space" but that Plaintiff should give his fingerprints. (Compl. ¶ 55.) Plaintiff refused to give his fingerprints without a warrant.

On March 13, Defendant Sanders and ADW Ball reviewed Plaintiff's security classification. They asked Plaintiff if he would provide his fingerprints. Plaintiff refused and was sent back to his cell.

According to the additional facts stated in Plaintiff's motion to amend his complaint, Defendants Sanders and Ball met with Plaintiff again on May 8 to review his security classification. Plaintiff presented them with paperwork from the Michigan State Police indicating that an investigative report had been prepared and forwarded to a prosecutor on January 18, 2012. Plaintiff asked why he was still in segregation if the police investigation had ended. Sanders and Ball looked at Plaintiff's paperwork and determined that an investigation was still underway. They also noted that Plaintiff continued to refuse to give his fingerprints. Plaintiff warned Ball that he would amend his § 1983 complaint to include Ball as a defendant. Ball laughed and stated, "it wouldn't be my first rodeo." (Mot. to Amend Compl., docket #5, Page ID#44.) Plaintiff was then returned to his cell.

Plaintiff alleges that his segregation is ongoing and is merely a means to coerce him to give his fingerprints. As a result of the segregation, he lost his prison job and has fewer privileges compared to the general prison population. He is confined to his cell for all but five hours per week,

he is not able to make phone calls or participate in rehabilitative programs, and he has reduced access to the prison commissary, to recreation, and to legal research materials and assistance.

Plaintiff claims that Defendants Ball, Schiebner, Sanders, Sharp, Thomas, Weaver, and Pallas have violated his right against unreasonable searches and seizures under the Fourth Amendment, his rights to freedom of speech and access to the courts under the First Amendment, and his right to due process under the Fourteenth Amendment. He contends that Warden Curtin is also liable because she knew or should have known of the conduct of the other Defendants, but she failed to correct it. As relief, Plaintiff seeks a preliminary and permanent injunction, damages, and a declaratory judgment.

## **Discussion**

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550

U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. State law

Plaintiff apparently contends that Defendants were not authorized to obtain fingerprints from him in November 2011 because the SORA, as amended by the Act, states that "[a]n individual required to be registered under this act shall have his or her fingerprints or palm prints or both taken *not later than September 12, 2011* if his or her fingerprints or palm prints are not already on file with the department." Mich. Comp. Laws § 28.727(q) (emphasis added). As the foregoing provision indicates, however, the September 2011 date is a deadline imposed on the "individual required to be registered," i.e. Plaintiff. In other words, the deadline in § 28.727(q) is not directed at Defendants; thus, it does not preclude Defendants from attempting to obtain Plaintiff's fingerprints after September 2011, and the expiration of that deadline does not exempt

Plaintiff from the SORA's registration requirements. In any event, to the extent Plaintiff claims that Defendants wrongly applied the SORA, or violated any state law or prison policy, he does not state a cognizable § 1983 claim, because § 1983 does not provide redress for a violation of state laws or prison policies. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

### B. Fourth Amendment

Plaintiff also claims that requiring him to submit fingerprints without a warrant violates his Fourth Amendment rights. The Fourth Amendment prohibits "unreasonable" searches and seizures. U.S. Const. amend. IV. The Sixth Circuit examines the reasonableness of suspicionless prisoner searches under a "totality of the circumstances" test. *Wilson v. Collins*, 517 F.3d 421, 427 (6th Cir. 2008) (considering the legality of prisoner DNA sampling). That test requires "'assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* at 425 (quoting *Samson v. California*, 547 U.S. 843, 848 (2006) (permitting suspicionless searches of parolees)). In *Wilson*, the plaintiff raised a Fourth Amendment challenge to an Ohio law requiring convicted felons to provide DNA samples to prison officials for inclusion in state and national DNA index systems. *See* 517 F.3d at 423-24. The court noted that challenges to similar laws in other states "have been uniformly rejected by the courts, as the government's compelling interests in crime control have consistently been deemed to outweigh the plaintiffs' diminished privacy interests." *Id.* at 424-25 (citing cases). According to *Wilson*, the Ohio statute did not violate the Fourth Amendment because, considering the minimal intrusion implicated by swabbing saliva, the government's compelling interest in collecting the DNA sample outweighed the plaintiff's "greatly diminished privacy interests as a convicted felon." *Id.* at 427-28; *see also*

*United States v. Conley*, 517 F.3d 421, 680-81 (6th Cir. 2008) (holding that the collection of a DNA sample from a convicted felon on supervised release does not violate the Fourth Amendment). Though Defendants did not actually "search" Plaintiff (because he did not allow them to take his fingerprints), the remaining circumstances in Plaintiff's case are not meaningfully distinguishable from those in *Wilson*. The fact that Plaintiff challenges the collection of fingerprints rather than the collection of a DNA sample does not distinguish *Wilson*, because obtaining a fingerprint is less intrusive than collecting a DNA sample. In short, considering the minimal intrusion associated with obtaining a fingerprint, the government's obvious interest in the use of fingerprints to facilitate crime control substantially outweighs Plaintiff's diminished privacy interests as a convicted sex offender. Therefore, Plaintiff does not state a Fourth Amendment claim.

### C.     First Amendment (access to the courts)

Plaintiff claims that his confinement in segregation impeded his access to legal materials and copies of documents from the prison library, which he needed to meet a deadline in a case before the Sixth Circuit Court of Appeals. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must allege "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir.

1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must assert a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999).

In addition, the Supreme Court has squarely held that actual injury is an element that must be addressed by the allegations in order to state a claim. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). According to the Court, "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. Plaintiff has not adequately alleged actual injury to a non-frivolous legal claim. He does not allege the nature of the action that he was pursuing before the Sixth Circuit, much less indicate how it was adversely affected by Defendants' conduct. Accordingly, he fails to state a First Amendment claim based on his right of access to the courts.

### D. First Amendment (retaliation)

Plaintiff asserts that Defendants issued him a misconduct and/or held him in segregation in retaliation for exercising his constitutional rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. In addition, where a plaintiff contends that he was charged with an offense in retaliation for protected conduct, he must allege and prove that the charging officer lacked probable cause. *See Barnes v. Wright*, 449 F.3d 709, 719-20 (6th Cir. 2006) (applying *Hartman v. Moore*, 547 U.S. 250 (2006)).

Filing a prisoner grievance is constitutionally-protected conduct, *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), as is filing a civil rights action, *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002), and verbally opposing state action, *McCurdy v. Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001). On the other hand, conduct violating a prison regulation is not protected. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (calling an officer a "foul and corrupt bitch" constitutes insolence in violation of MDOC policy and is not protected conduct).

#### 1. Defendant Schiebner

Plaintiff asserts that Defendant Schiebner retaliated by writing a misconduct on Plaintiff, elevating the misconduct to a class I misconduct, and keeping Plaintiff in segregation pending the conclusion of the Michigan State Police investigation. It is not at all clear, however, what protected conduct could have motivated Schiebner's allegedly retaliatory actions. Refusing to obey a "valid and reasonable" order from a prison corrections officer violates MDOC Policy

Directive 03.05.105B and is, therefore, not protected conduct. *See Lockett*, 526 F.3d at 874. To the extent Plaintiff contends that the order was not valid under state law or under the Fourth Amendment, he is mistaken. *See* Sections I.A, I.B, *supra*.

Plaintiff did file a grievance about his interaction with Schiebner, but Schiebner warned Plaintiff that he could be charged with a misconduct *before* Plaintiff even indicated that he was going to file a grievance. Thus, it appears that Schiebner would have issued a misconduct even in absence of Plaintiff's complaints.

Moreover, Plaintiff has not alleged that Schiebner lacked probable cause to charge him with a misconduct. *See Barnes*, 449 F.3d at 719-20. To the contrary, Plaintiff acknowledges that he disobeyed Schiebner's order and that he was ultimately found guilty of the misconduct by a separate hearing officer. The finding of guilt definitively establishes the existence of probable cause. Thus, Plaintiff's claim fails with respect to the misconduct charge.

To the extent Schiebner took any other adverse action *after* Plaintiff complained about the fingerprint requirement, none of Plaintiff's allegations plausibly suggest that Schiebner's actions were motivated by protected conduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). It is also established that "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity between the protected conduct and the

adverse actions are not sufficient to show a retaliatory motive). Plaintiff's contention that Schiebner's actions were retaliatory is purely conclusory. For all the foregoing reasons, therefore, Plaintiff fails to state a retaliation claim against Schiebner.

2. Defendants Pallas, Ball, Sanders, Sharp, Thomas, and Weaver

Plaintiff further contends that Pallas found Plaintiff guilty of the misconduct, and that Defendants Ball, Sanders, Sharp, Thomas, and Weaver kept Plaintiff in segregation, all in retaliation for Plaintiff's exercise of his Fourth Amendment and First Amendment rights. Like his allegations against Defendant Schiebner, however, Plaintiff's allegations against the foregoing Defendants are not sufficient to state a retaliation claim. As indicated, Plaintiff's refusal to provide fingerprints is not protected conduct. To the extent Plaintiff relies on his filing of grievances and complaints to officials as his protected conduct, none of the facts alleged in the complaint plausibly suggest a causal connection between Defendants' allegedly adverse actions and any such protected conduct. Accordingly, Plaintiff fails to state a retaliation claim against Defendants Pallas, Ball, Sanders, Sharp, Thomas, and Weaver. In light of the foregoing, the Court will dismiss Plaintiff's retaliation claim as to all Defendants.

**E.     Fourteenth Amendment (procedural due process)**

Plaintiff also claims that Defendants have violated his right to due process under the Fourteenth Amendment. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. A plaintiff asserting a due-process claim must identify a deprivation of a constitutionally-protected liberty or property interest. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The basis for Plaintiff's due-process claim is not clear. To the extent Plaintiff challenges the propriety of his misconduct conviction, his right to due process depends on whether the conviction implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his misconduct conviction resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[6] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at

---

[6] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible interest implicated by the misconduct conviction itself, a prisoner may be able to raise a due-process challenge to prison conditions that constitute a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Generally, placement in segregation is not such a condition. *Id.* at 484; *see also Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). Courts will, however, consider the nature and duration of an extended stay in segregation to determine whether it imposes atypical and significant hardship. *Harden-Bey v. Rutter*, 524 F.3d 789, 793 (6th Cir. 2008). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation for an extended period does not present atypical and significant hardship. *See, e.g., Jones v. Baker*, 155 F.3d 810, 812-23 (6th Cir.1998) (two years of segregation while inmate was investigated for murder of prison guard in riot); *Mackey v. Dyke*, 111 F.3d 460, 461 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). The length of Plaintiff's stay in segregation, which has been ongoing for approximately five months, does not rise to the level of the aforementioned cases. Moreover, Plaintiff does not allege that his

segregation is indefinite. *Cf. Harden-Bey*, 524 F.3d at 795 (remanding to district court to determine whether the plaintiff's allegedly indefinite segregation is atypical and significant). To the contrary, Plaintiff has been told on several occasions that he might be released from segregation if he provides his fingerprints.

The Court notes that while the *duration* of Plaintiff's confinement in segregation is not determinative, *see Jones*, 155 F.3d at 812, none of Plaintiff's allegations regarding the *nature* of his segregation indicate that it imposes atypical and significant hardship, including: the loss of his prison job, *see Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989) (no constitutional right to a prison job), the lack of access to prison rehabilitative programs, *see Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (no constitutional right to participation in a rehabilitative program); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services), and his ineligibility for transfer to another security classification, *see Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976) (no right to remain at a particular prison).

Consequently, the court concludes that no liberty interest is implicated by Plaintiff's misconduct conviction and confinement in segregation. Because Plaintiff has not alleged that Defendants' conduct has resulted in an extension of the duration of his sentence or some atypical and significant hardship, his due-process claim must fail. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

Finally, even if the Court were to assume that the misconduct conviction and/or segregation implicated Plaintiff's due-process rights, it appears that Plaintiff has received all the process due to him. Plaintiff acknowledges that he was given notice and a hearing regarding his

misconduct charge.[7] He has also received regular in-person reviews of his continued confinement in segregation, *see Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983) (indicating that "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates [in administrative segregation]"), and at each review, Defendants determined that a police investigation was pending and/or Plaintiff refused to provide fingerprints, *see Harris v. Caruso*, No. 09–2191, 2012 WL 661952, at *3 (6th Cir. Feb. 29, 2012) ("[T]he decision to continue confinement must be supported by 'some evidence.'") (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). Thus, Plaintiff has received process and there is no indication that it was constitutionally defective. Plaintiff may disagree with Defendants' decisions, either because he believes that the Act does not apply, or because he believes that it is not necessary to segregate him, but the Due Process Clause does not guarantee that a given procedure will produce a correct decision. *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980) ("It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process."). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

Therefore, because Defendants' actions did not implicate an interest protected by the Due Process Clause, and because Plaintiff appears to have received all the process to which he was entitled, his procedural due process claim must be dismissed for failure to state a claim.

---

[7] In *Wolff,* the Supreme Court held that, when a prison disciplinary proceeding implicates a liberty interest, it must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69.

### F. Fourteenth Amendment (substantive due process)

Plaintiff also contends that Defendants' conduct violated his right to substantive due process. To the extent Plaintiff complains about being required to provide fingerprints, the "more explicit textual source of constitutional protection" for such a claim is found in the Fourth Amendment; thus, he cannot proceed under the "more generalized notion of substantive due process." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Similarly, to the extent Plaintiff complains about his conditions of confinement, there is a more explicit source of constitutional protection in the Eighth Amendment. *See* Section I.G, *infra*. Therefore, Plaintiff cannot raise a substantive due process claim.

### G. Eighth Amendment

Plaintiff alleges that his conditions of confinement in segregation violate his right to substantive due process, which the Court construes as an Eighth Amendment claim. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Courts recognize that placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v.*

*McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999).

Although it is clear that Plaintiff has been denied certain privileges as a result of his segregation, he does not allege that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, No. 09-6283, 2001 WL 2579779, at *5 (6th Cir. June 29, 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. §1997e(e); *see also Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim.

### H. Respondeat Superior

According to Plaintiff, Warden Curtin is liable because she failed to correct the conduct of the other Defendants, even after he notified her of his situation. Plaintiff does not state a claim against Curtin, however, because she may not be held liable for the unconstitutional conduct of her subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based

upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Curtin engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.


Dated:  June 8, 2012                                /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE